**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CASSANDRA SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 17 C 761** |
| | ) | |
| **v.** | ) | **Magistrate Judge M. David Weisman** |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1] | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Cassandra Scott brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff applied for benefits on August 25, 2010, alleging a disability onset date of November 21, 2008. (R. 121, 209.) Her application was initially denied on December 28, 2010, and again on reconsideration on June 16, 2011. (R. 121-22.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on December 4, 2012 and May 1, 2013. (R. 33-120.) On July 8, 2013, the ALJ issued a decision finding that plaintiff was not disabled. (R. 17-27.) The Appeals Council declined to review the decision, and plaintiff appealed to this Court, which remanded the case to the Commissioner for further proceedings. (R. 1-3, 1358-63.) The ALJ held a second hearing on August 24, 2016 (R. 1280-1352), and on

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited Aug. 15, 2017). Accordingly, the Court substitutes Berryhill for Carolyn Colvin pursuant to Federal Rule of Civil Procedure 25(d).

December 6, 2016, he found that plaintiff was disabled from February 1, 2009 through June 30, 2011 but not after that date. (R. 1252-66.) The Appeals Council declined review (R. 1277), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245

F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 1, 2009, the date she became disabled. (R. 1256.) At step two, the ALJ determined that, from February 1, 2009 through June 30, 2011, plaintiff had the severe impairments of "status post myofascial[2] flap closure with open wound complications, Crohn's disease, mild obesity and glaucoma." (*Id.*) At step three, the ALJ found that, from February 1, 2009 through June 30, 2011, plaintiff's status post myofascial flap closure with open wound complications met listing 8.04, but her impairments did not meet or equal a listed impairment after June 30, 2011. (R. 1256-58.) At step four, the ALJ found that, after June 30, 2011, plaintiff could not perform her past relevant work but had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 1258, 1264.) At step five, the ALJ determined that, starting July 1, 2011, jobs existed in significant numbers in the national economy that plaintiff could have performed, and thus she was not disabled. (R. 1264-66.)

Plaintiff says the record does not support the ALJ's conclusion that, as of June 30, 2011, her medical condition improved sufficiently that she was no longer disabled. The only impairment the ALJ found to be disabling was plaintiff's status post myofascial flap closure with open wound complications:

> The undersigned finds that, from February 1, 2009, through June 30, 2011, the severity of claimant's impairments equaled listing 8.04. The listing requires chronic infections of the skin or mucous membranes, with extensive fungating or

[2]Myofascial means "pertaining to or involving the fascia surrounding and associated with muscle tissue." *Myofascial*, Dorland's Illustrated Medical Dictionary (32ed 2012).

> extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed.
>
> . . . .
>
> The record reflects that the claimant's appendix ruptured in February 2009 and the wound was draining in March 2009. The claimant underwent wound revision surgery later that month along with wound closure. Notes from May 2009 reflect a pool of drainage would need exploration. From August 7, 2009 to August 11, 2009, the claimant was admitted for wound exploration. The medical expert testified that the claimant underwent numerous surgeries, required scar tissue resection, underwent myofascial flap closure and experienced post-surgical complications. . . . [T]he medical expert testified he believed the claimant met listing 8.04 for the period indicated. . . .

(R. 1257) (citations omitted). The ALJ says this impairment was no longer disabling as of July 1, 2011 because, by that date, the wound had healed and plaintiff had stopped physical therapy and resumed her household duties. (R. 1258; *see* R. 1313 (testimony of medical expert that, by June 24, 2011, plaintiff was "resuming her – doing her laundry, her household duties, and she just discontinued the physical therapy at that time"); R. 1133 (physical therapist reporting that plaintiff "ha[d] not been to therapy since her last visit on 6.24.11").)

Certainly, the record shows that plaintiff's condition had improved between February 2009 and June 2011. But she stopped being disabled only if her medical improvement was related to her ability to work; that is, "there [was] a decrease in the severity . . . of [her] impairment(s) . . . and an increase in [her] functional capacity to do basic work activities," including "walking, standing, pushing, pulling, reaching and carrying, . . . seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers." 20 C.F.R. § 404.1594(b)(3), (4). The ALJ said that plaintiff had experienced medical improvement because:

> The medical expert testified [that] . . . the wound was no longer draining, the wound was no longer there and it no longer required care. He further

> explained the notes reflect the claimant's capacity for activity increased, further suggesting improvement. . . .
>
> . . . .
>
> As of July 1, 2011, the claimant was making progress with physical therapy required to address symptoms of weakness related to her open abdominal wound. She also no longer required home health aide visits. She independently could shop for groceries for thirty minutes at a time.

(R. 1258) (citations omitted).

This description of the record, however, is skewed. The progress note from plaintiff's June 21, 2011 physical therapy session states:

> Currently, patient reports to be improving and feels approximately 50% of normal . . . . She reports no buckling with ambulation. She just started to resume laundry duties as well as other household duties. Patient reports difficulties in and out of vehicle, especially after sitting to stand approximately 50% of time. She continues to take pain medications every 6 hours. She continues to have sleep disturbances with complaints of spasms that have increased in both legs as well as some aching sensation. She states this occurs every other night 2-3x. She reports tolerance of only 30 minutes of grocery shopping. She states that she is now able to ambulate up the stairs reciprocally with no handrail.
>
> . . . .
>
> . . . . The extent of surgeries patient has experienced is resulting in slow progression. Patient still has significant abdominal upper and lower weakness. . . . . Patient would benefit from continued physical therapy to monitor slow progression of exercises to improve patient's functionality and facilitate return to work.

(R. 1134-35.) Moreover, the therapist noted that plaintiff had *not* met the goals of being able to "tolerate 25# crate lifting from floor to waist" and "push/pull at least 25# 5x for 60 ft. for progression toward work duties," and had only "partially met" the goal of being "able to tolerate laundry independently." (R. 1135.) This assessment does not suggest that plaintiff was able to return to light work at the end of June 2011, and the ALJ's conclusion otherwise was error. *See* Dictionary of Occupational Titles, App'x C, § IV,

http://www.occupationalinfo.org/appendxc_1.html#STRENGTH (stating that light work requires "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. . . . [A] job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.").

That error was compounded by the fact that the ALJ considered plaintiff's wound impairment in isolation. Though he acknowledged that plaintiff also had the severe impairments of Crohn's disease, obesity, and glaucoma, he did not consider the impact of any of these impairments in his making his medical improvement determination. (R. 1256, 1258.) That too was error. *See* 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (stating that "an ALJ is required to consider the aggregate effects of a claimant's impairments").

Plaintiff also contends that the ALJ improperly considered the medical opinion evidence, giving more weight to the opinion of the non-treating medical expert than to the opinions of plaintiff's treating physician, Dr. Adjei. An ALJ must give a treating physician's opinions controlling weight if "[they are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the]

record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

In September 2011, Dr. Adjei completed an RFC questionnaire, stating that Crohn's disease caused plaintiff to have "[d]aily generalized abdominal pain," "[f]requent diarrhea," and "GI bleeding." (R. 1085.) He said she had been on Pentasa and Prednisone but there had been a "loss of response," so she started taking Humira. (*Id.*) Dr. Adjei said that plaintiff's symptoms would "frequently" interfere with her attention and concentration, made her incapable of performing even low stress jobs, enabled her to sit for only thirty minutes and stand for only fifteen minutes, and would cause her to take unscheduled breaks every fifteen to thirty minutes. (R. 1086-87.) In July 2013, Dr. Adjei completed a second RFC questionnaire in much the same way, saying that plaintiff's persistent pain and frequent bowel movements made her incapable of working. (R. 1452-55.) The ALJ noted that Dr. Adjei is a specialist who had treated plaintiff for four years. (R. 1260-61.) The ALJ nonetheless rejected Dr. Adjei's opinion because he did not "have an informed and longitudinal basis for offering an opinion" about her functioning, and "[had] documented observations [that were] inconsistent with the degree of restriction he has assigned." (R. 1261, 1264.)

Dr. Adjei's purported lack of longitudinal basis for his opinion is not supported by the record. Though Dr. Adjei had not personally examined plaintiff in the year before he completed the 2013 RFC questionnaire, the record shows that, in that period, plaintiff saw Dr. Adjei's

associate, received Humira injections when she could afford to do so, and was diagnosed as having "active" Crohn's disease with joint pain and anemia. (*See* R. 1097-1104, 1106-13.) Moreover, the inconsistency the ALJ cited between Dr. Adjei's notes and his opinions – the former do not mention manipulative restrictions but the latter do (R. 1264) -- may be a reason not to accord his opinions controlling weight, but it is not a basis for rejecting them out of hand. Given that he is a specialist who treated plaintiff for years and whose diagnosis of Crohn's disease was supported by clinical and laboratory diagnostic techniques, the ALJ erred in rejecting Dr. Adjei's opinions wholesale. *Moss*, 555 F.3d at 561.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [13], denies the Commissioner's motion for summary judgment [16], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.** **ENTERED: October 11, 2017**

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**